UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

   - v. -                           :      **SEALED INDICTMENT**

AMEET GOYAL,                        :      19 Cr. 844(   )

             Defendant.            :

- - - - - - - - - - - - - - - - - x

## COUNT ONE
### (Health Care Fraud)

The Grand Jury charges:

**OVERVIEW OF THE FRAUDULENT SCHEME**

1. From at least in or about January 2010 up to and including at least in or about March 2017 (the "Relevant Time Period"), AMEET GOYAL, the defendant, and others known and unknown, participated in a scheme to defraud patients, the Medicare Program, and private insurance plans with respect to billing for ophthalmologic medical services.

2. In order to effectuate the scheme, among other things, AMEET GOYAL, the defendant, submitted and caused to be submitted false and fraudulent claims to the Medicare Program and private insurance plans, including claims for services to patients that were not rendered, claims that misrepresented the services provided, and claims that falsely billed for a level of service higher or more complicated than the level performed. In addition,

AMEET GOYAL, the defendant, sent bills to individual patients for services that were not rendered, that misrepresented the services provided, and that falsely billed for a level of service higher or more complicated than the level performed.

3.   During the course of the scheme, AMEET GOYAL, the defendant, billed the Medicare Program, private insurance plans, and patients at least approximately $8 million for certain supposedly performed surgical procedures, including orbitotomies, conjunctivoplasties performed in parallel to orbitotomies, and excisions and repair of eyelid.  GOYAL and his ophthalmology Practice received over $3 million in payments for such claims.  A substantial portion of these claims contained fraudulent billing for procedures not performed.

### THE DEFENDANT AND RELEVANT PERSONS AND ENTITIES

4.   At all times relevant to this Indictment, AMEET GOYAL, the defendant, was an ophthalmologist and oculoplastic surgeon, certified by the American Board of Ophthalmology, and licensed to practice medicine in New York State.

5.   At all times relevant to this Indictment, The Eye Associates Group (the "Practice"), was an ophthalmology and oculoplastic medicine practice that operated an office in Rye, New York, called "Rye Eye Associates."  At certain times relevant to this Indictment, the Practice also operated ophthalmology

practices in Wappingers Falls and Mt. Kisco, New York, and Greenwich, Connecticut.

6. AMEET GOYAL, the defendant, formed, owned, operated, and practiced at the Practice. The Practice also employed, at various times relevant to this Indictment, certain other ophthalmologists and oculoplastic surgeons who reported to GOYAL (collectively with GOYAL, the "Ophthalmologists").

**BACKGROUND ON MEDICARE AND PRIVATE HEALTH CARE BENEFIT PROGRAMS**

7. At all times relevant to this Indictment, the Medicare Program ("Medicare") was a federal health care program providing benefits to persons who are over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

8. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b) and referenced in Title 18, United States Code, Section 1347.

9. Medicare was subdivided into multiple Parts. Medicare Part B generally covered the costs of physicians' services and outpatient care. Generally, Medicare Part B covered such costs

if, among other requirements, they were medically necessary and ordered by a physician.

11. In order to bill the Medicare program, a health care provider was required to complete an enrollment application and be approved to participate in the program. Once approved, the provider was assigned a unique Medicare provider number. Each claim for reimbursement submitted on behalf of a health care provider -- whether in paper form or electronically -- must have identified that claimant's Medicare provider number. Upon enrollment, and periodically thereafter, each Medicare provider was furnished with information relevant to participating in the program and how to bill for services rendered.

11. To receive payment from Medicare for a covered service, a medical provider was required to submit a claim, either electronically or in writing, through Form CMS-1500 or Form UB-92. These forms required a provider to state a diagnosis of the patient's condition and provide a procedure code (which codes are established and published by the American Medical Association), known as a CPT code, identifying the service or services rendered. The Medicare program required that a provider certify the services rendered were medically necessary and were furnished by that provider. Providers participating in Medicare must have agreed in writing that they will be responsible for the accuracy of all

4

claims submitted by themselves, their employees or their agents, and that all claims submitted under their provider numbers will be accurate, complete, and truthful.

12. At all times relevant to this Indictment, the Practice submitted claims to private insurance plans, affecting commerce, under which medical benefits, items and services were provided to individuals (collectively, the "Private Benefit Programs").

13. Each of the Private Benefit Programs is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b) and referenced in Title 18, United States Code, Section 1347.

14. To receive reimbursement or payment from the Private Benefit Programs, the Practice submitted claims, based on CPT codes, either electronically or in writing, for payment of services, either directly or through a billing company.

**SERVICES COVERED BY MEDICARE AND THE PRIVATE BENEFIT PROGRAMS**

15. Medicare and the Private Benefit Programs (collectively, the "Insurance Providers") covered the costs of certain medical tests, procedures, and other medical services. Generally, the Insurance Providers covered these costs only if, among other requirements, the medical services were actually rendered and were medically necessary.

16. The Insurance Providers covered the costs of ophthalmological services and oculoplastic surgery services, including excisions of chalazions, excision of eyelid, full thickness, orbitotomy, and conjunctivoplasty.

17. At all times relevant to this Indictment, the Ophthalmologists in the Practice commonly treated a minor eyelid condition called a chalazion. A chalazion is a small, typically painless bump that appears on the eyelid usually due to a blocked oil gland. Chalazions are commonly treated with warm compresses and gentle massage to clear up on their own. Chalazions that require surgical intervention, typically referred to as "excision of chalazion," are often treated through an incision on the eyelid and drainage -- a type of eyelid surgery. An ordinary excision of chalazion is generally performed under local numbing anesthesia and is typically completed in less than 15 minutes.

18. Under the relevant coding guidelines for the Insurance Providers, an excision of chalazion must be billed under its specific CPT code and not as some other service, such as an excision and repair of eyelid, orbitotomy, or conjunctivoplasty. During the Relevant Time Period, AMEET GOYAL, the defendant, billed Insurance Providers and patients CPT codes associated with treatment of a chalazion fewer than 40 times for his own procedures. GOYAL billed these chalazion-related CPT codes at

approximately $400 and received an average payment of approximately $200 for each of his procedures billed under those codes.

19. An excision and repair of eyelid, as coded under CPT code 67961, is a type of eyelid surgery involving reconstruction or removal of certain lesions other than chalazions. During the Relevant Time Period, AMEET GOYAL, the defendant, billed Insurance Providers and patients CPT code 67961 over 1,600 times for his own procedures. GOYAL billed CPT code 67961 at approximately $1,500, and received an average payment of approximately $500 for each of his procedures billed under that code.

20. An orbitotomy is a significant surgical procedure into the orbit of the eye, often to remove an orbital tumor. A typical orbitotomy usually requires at least monitored anesthesia care or general anesthesia, and generally takes approximately an hour or more to perform. An orbitotomy is a more complex, time-consuming, and expensive surgery than the excision of chalazion. During the Relevant Time Period, AMEET GOYAL, the defendant, billed Insurance Providers and patients CPT codes associated with an orbitotomy over 1,400 times for his own procedures. GOYAL billed these orbitotomy-related CPT codes at approximately $2000, and

received an average payment of approximately $950 for each of his procedures billed under those codes.

21. A conjunctivoplasty is a procedure that generally removes or rearranges a part of the conjunctiva, the clear, thin membrane that covers a part of the front surface of the eye, and the inner surface of the eyelids. A conjunctivoplasty is sometimes performed to graft or extend tissue onto a conjunctival wound. It is a different procedure than the excision of chalazion. During the Relevant Time Period, AMEET GOYAL, the defendant, billed Insurance Providers and patients CPT codes associated with a conjunctivoplasty over 700 times together with a bundled "orbitotomy" for the same patient. GOYAL billed these bundled conjunctivoplasty-related CPT codes at approximately $2000 or $2,500, and received an average payment of approximately $400 -- in addition to the orbitotomy payments -- for each of his procedures billed under those codes.

### OVERVIEW OF THE HEALTH CARE FRAUD SCHEME

22. In order to effectuate the scheme to defraud, AMEET GOYAL, the defendant, and others known and unknown, systematically submitted claims for procedures not performed, such as orbitotomies, conjunctivoplasties, and excision and repair of eyelid, when in fact, those surgeries were not performed, and the

procedure actually performed was an excision of chalazion or other similar lower-paying minor eyelid procedure.

23. To further effectuate the scheme, among other things, AMEET GOYAL, the defendant, directed employees of the Practice to falsify billing documents and other medical records, by, among other things, characterizing excisions of chalazions and other minor procedures as higher-paying surgeries, such as orbitotomies with conjunctivoplasties. As part of the scheme, GOYAL threatened the livelihood of employees of the Practice who were reluctant to comply with these directions. GOYAL also personally falsified certain patient medical records, including his own operating reports, to falsely describe procedures he did not perform in order to match his fraudulent billing claims.

24. From approximately January 2010 through approximately March 2017, AMEET GOYAL, the defendant, and others known and unknown at the Practice, billed the Insurance Providers and patients over $8 million for supposedly performed orbitotomies, parallel conjunctivoplasties, and excisions and repair of eyelid, and received over $3 million in payments for such claims. A substantial portion of these claims contained fraudulent billing for procedures not performed.

25. The Insurance Providers paid these fraudulent claims through, among ways, interstate wire transfers into a bank

account established and controlled by AMEET GOYAL, the defendant, in the Southern District of New York.

26. As part of the scheme, AMEET GOYAL, the defendant, caused debt collection procedures to be initiated against multiple patients who did not pay the full amount of fraudulently billed procedures that were not performed.

### STATUTORY ALLEGATIONS

27. From at least in or about January 2010 up to and including in or about March 2017, in the Southern District of New York and elsewhere, AMEET GOYAL, the defendant, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, to wit, AMEET GOYAL participated in a scheme to defraud the Insurance Providers by making materially false statements in claims for payment for the provision of medical services.

(Title 18, United States Code, Sections 1347 & 2.)

### COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

28. The allegations set forth in paragraphs 1 through 27 of this Indictment are repeated and realleged as if fully set forth herein.

29. From at least in or about January 2010 up to and including in or about March 2017, in the Southern District of New York and elsewhere, AMEET GOYAL, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and attempting to do so, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, AMEET GOYAL participated in a scheme to defraud the Insurance Providers and the patients by making and causing others to make materially false statements in claims for payment for the provision of medical services, and in furtherance thereof, AMEET GOYAL caused wire communications to be sent in interstate commerce, including through electronic claims made to Insurance Providers and payments received from Insurance Providers.

(Title 18, United States Code, Sections 1343 & 2.)

**COUNT THREE**
**(False Statements Relating to Health Care Matters)**

The Grand Jury further charges:

30. The allegations contained in paragraphs 1 through 29 of this Indictment are repeated and realleged as if fully set forth herein.

31. From at least in or about January 2010 up to and including in or about March 2017, in the Southern District of New York and elsewhere, AMEET GOYAL, the defendant, in matters involving health care benefit programs, and in connection with the delivery of and payment for health care benefits, items, and services, willfully and knowingly did falsify, conceal, and cover up by trick, scheme, and device, material facts, and make materially false, fictitious, and fraudulent statements and representations, and did make and use materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, AMEET GOYAL made and caused others to make materially false statements to the Insurance Providers in claims for payment for the provision of medical services.

(Title 18, United States Code, Sections 1035 & 2.)

**FORFEITURE ALLEGATION**

32. As a result of committing the offenses alleged in Counts One, Two, and Three, of this Indictment, AMEET GOYAL, the defendant, shall forfeit to the United States, pursuant to Title

18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses alleged in Counts One, Two, and Three of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

33.  If any of the above described forfeitable property, as a result of any act or omission of the defendants:

>  (a) cannot be located upon the exercise of due diligence;
>
>  (b) has been transferred or sold to, or deposited with, a third person;
>
>  (c) has been placed beyond the jurisdiction of the Court;
>
>  (d) has been substantially diminished in value; or
>
>  (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

- v. -

**AMEET GOYAL,**

                    **Defendant.**

**SEALED INDICTMENT**

19 Cr. ___ (___)

(Title 18, United States Code,
Sections 1035, 1343, 1347, & 2)

GEOFFREY S. BERMAN
United States Attorney.