

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

June 25, 2020

**BY ECF**
Honorable Cathy Seibel
United States District Judge
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

Re: *United States* v. *Ameet Goyal*, S1 19 Cr. 844 (CS)

Dear Judge Seibel:

The Government respectfully submits this letter in advance of the conference scheduled on June 26, 2020 for the defendant's arraignment on the Superseding Indictment, bail review, and discussion of the impact of the Superseding Indictment on the pending motion schedule.[1]

For the reasons set forth below, the Government requests that the Court revoke the defendant's bail pursuant to 18 U.S.C. § 3148(b). While on pre-trial release for charges of running a seven-year healthcare fraud scheme that defrauded insurers and patients of millions of dollars, Ameet Goyal committed a new, breathtakingly brazen fraud. Specifically, Goyal defrauded the Paycheck Protection Program ("PPP") administered by the Small Business Administration of $637,200 by blatantly and repeatedly lying that he was not under any pending charges, as required to access the program. On top of that, to circumvent the program's single-loan-per-business restriction intended to make the limited funds available to as many businesses as possible, Goyal successfully submitted multiple fraudulent applications under different names, e-mail addresses, and business identification numbers on behalf of his single ophthalmology practice (the "Practice").

Because there is no apparent set of bail conditions short of remand that would reasonably assure the safety of the community and preclude the defendant from continuing to commit financial crimes from the comfort of his home, and because Goyal has demonstrated that he is unlikely to abide by any condition or combination of conditions of release in the future, the Court should revoke Goyal's bail and order him detained pending trial.[2]

---

[1] As to the latter, in the interest of efficiency and to avoid piecemeal adjudication on multiple indictments, the parties plan to propose to the Court that the defense be given a reasonable amount of time to review additional discovery and file motions addressing the Superseding Indictment in its entirety (even if by reincorporating the prior filed motions with respect to Counts 1-3), and the Government will then respond to the motions within 2 weeks.

[2] The Government is cognizant of arguments the defendant is likely to make with respect to the COVID-19 pandemic and its attendant risks on detainees, and will be prepared to respond to them.

I.   **Factual Background**

   A.  <u>The Original Offense Conduct and Goyal's Conditions of Release</u>

The original Indictment returned on November 21, 2019 charged Goyal with healthcare fraud, wire fraud, and making false statements relating to healthcare matters, in violation of Title 18, United States Code, Sections 1347, 1343, 1035, and 2.  The Indictment charged that from on or about January 2010 up to and including at least in or about March 2017, the defendant systematically submitted claims for procedures not performed, directed employees of the Practice to falsify billing documents and other medical records, and threatened the livelihood of employees of the Practice, including junior doctors, who were reluctant to comply with these directions. Goyal also personally falsified certain patient medical records, including his own operating reports, to falsely describe procedures he did not perform in order to match his fraudulent billing claims.  As part of the scheme, Goyal billed insurance providers over $8 million for supposedly performed orbitotomies, parallel conjunctivoplasties, and excisions and repair of eyelid, a substantial portion of which was not performed.  The defendant even caused debt collection procedures to be initiated against multiple patients who did not pay the full amount of fraudulently billed procedures that were not performed.

On November 22, 2019, Goyal was presented and arraigned before the Honorable Paul E. Davison on the Indictment.  Judge Davison ordered that Goyal be released on a $1,000,000 fully secured bond subject to a number of conditions, including that Goyal not commit any new crimes. Judge Davison explicitly warned the defendant:

> THE COURT:  If you don't follow Pretrial's instructions, you're in violation of your bail conditions.  Your bail could be revoked. Sir, this is a setting of bail. That means, upon your release, you must refrain from committing any violations of law whatsoever. That includes federal, state and local crimes. If you commit a felony

---

We note at the outset, that Westchester County Jail, where the Court could recommend the defendant be housed, has taken aggressive, successful measures to mitigate the spread of COVID-19 and as of the date of this letter, has no currently positive COVID-19 inmates or staff.  It would also be striking for the defendant to exploit the COVID-19 pandemic to defraud the PPP, while knowing that committing a crime on bail could lead to his detention, and then, when caught, point to the pandemic as a reason to avoid detention.  In the event that the Court declines to detain the defendant at this time, then in order to help mitigate the risk that the defendant will continue to commit financial crimes through electronic means, the Government would strongly urge that he be placed on home incarceration and GPS monitoring—with exceptions for his own medical appointments and court appearances only—and with either no access to internet-capable devices or monitoring of any internet-capable devices he uses.  It bears noting however, that unlike in supervision cases where Pretrial Services uses software to monitor for the presence of discrete electronic files like child pornography, in this case, it is difficult to imagine how Pretrial Services could practically and effectively monitor the defendant's electronic communications for criminal misrepresentations to banks, healthcare providers, and others.

while you're on release for this charge, you may be subject to an additional prison term of up to ten years. That's on top of whatever you're facing on these charges and on top of whatever you might be facing on the new charges. . . .

. . . If you violate any of the conditions of your release, your bail may be immediately revoked and you may be detained pending trial.

Likewise, Judge Davison's Order Setting Conditions of Release, which Goyal signed, advised Goyal that "While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years . . . ." *See* Ex. A.  At a conference later on the same day, this Court reiterated the serious consequences that would follow if he were to violate his bail conditions:

> THE COURT: All right. So, Dr. Goyal, you're going to be released on the conditions set by the Magistrate Judge this morning. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right. And you understand the consequences can be very serious if you violate any of those conditions?
>
> THE DEFENDANT: Yes, ma'am

B. Goyal's Criminal Activity on Bail

As detailed in the Superseding Indictment, in late April 2020 and early May 2020—in the weeks and days before the defendant was due to appear telephonically before this Court for the May 12, 2020 status conference—the defendant committed an audacious and callous fraud against the program set up to support eligible small businesses in dire financial straits from the coronavirus pandemic.

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of hundreds of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses through the SBA's PPP.

Applicants with pending criminal charges are ineligible for PPP loans.  One question on the PPP borrower application form (the "Pending Charges Question") requires the applicant to answer "Yes" or "No" and put their initial next to the response to the following question:  "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?"  The application expressly advises that if the Pending Charges Question is answered "'Yes,'" then "the loan will not be approved."

The PPP also limits each business to one loan, and a maximum loan amount based on approximately 2.5 times of a business's average monthly payroll expenses. The PPP application requires the applicant to certify and initial the representation that "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."

In order to receive a PPP application from Bank-1, Goyal first had to submit a web form that asked certain threshold eligibility questions, including whether Goyal (as applicant or owner of the applicant) was under indictment. On April 10 and 14, 2020 Goyal filled out these web forms for two different loans, with two different loan amounts, under two different business names, with two different business identification numbers, and using two different e-mail addresses. On both forms, Goyal lied that he was not under indictment. *See* Ex. B at 1 (Loan-1 Web Form) & C at 1 (Loan-2 Web Form). He subsequently received formal applications from Bank-1 to fill out, sign, and apply for these loans, where he repeated and swore to the same misrepresentations.

On or about April 21, 2020, Goyal signed a loan application for a loan ("Loan-1") in the amount of $358,700 for the business "Ameet Goyal," doing business as "Eye associates." *See* Ex. D ("Loan-1 Application"). Goyal represented the applicant as a C-corporation with a business address in Rye, New York ("Business Address-1") and supplied his own social security number as the applicant's business identification number.

On or about April 29, 2020, Goyal signed a loan application for a second loan ("Loan-2") from Bank-1 under the PPP, this time in the amount of $278,500. *See* Ex. E ("Loan-2 Application"). On this application, Goyal listed the applicant's name as "Rye eye associates," a sole proprietorship also located at Business Address-1. For the applicant's business identification number, Goyal reported the Employer Identification Number for Ameet Goyal, M.D. P.C.

On each application, Goyal acknowledged that he was the President and 100% owner of the respective applicant. Exs. D&E at 1. He also certified—despite knowing that he was putting in multiple applications for different stated business names and business identification numbers— that he did not own any business other than the listed applicant. Exs. D & E at 1 (Question 3).

To substantiate each loan, Goyal submitted to Bank-1 a payroll report generated by his payroll services provider for his business, printed on April 7, 2020 (the "Payroll Report"). *See* Ex. F.[3] The Payroll Report is titled "CARES SBA-PPP: Employee Detail From: 01/01/19 To: 12/31/19." It identifies the underlying business as Ameet Goyal MD PC, provides the names and payroll expenses for each employee, and represents the business's per-employee payroll expenditures for each month of 2019, with an average 2019 monthly payroll cost of $97,272,77 for the business. Thus, although each loan application purported to be for a different loan, with a different loan amount, to a different business name, with a different business identification number, and a different business e-mail address—all of which plainly appears to have been

---

[3] Because the Payroll Report contains personal identifying information of third parties, it is being filed under seal, along with other information of similar nature.

designed to circumvent any due diligence that would have flagged multiple loans for the same business—Goyal submitted the exact same Payroll Report, with the exact same employees and qualifying expenses for both loans.

On both applications, Goyal falsely answered "No" to the Pending Charges Question, and electronically placed his initials "AG" directly under his "No" response, as depicted below:

Loan-1 Application:

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| | Question | Yes | No |
|---|---|---|---|
| 5. | Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole? | ☐ | ☒ |
| | Initial here to confirm your response to question 5 → *AG* | | |

Loan-2 Application:

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| | Question | Yes | No |
|---|---|---|---|
| 5. | Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole? | ☐ | ☒ |
| | Initial here to confirm your response to question 5 → *AG* | | |

Goyal also falsely certified and initialed, among other things, that business for which he was applying would not receive another PPP loan until the end of the year. Exs. D & E at 2. Finally, Goyal certified the truth of his representations and acknowledged the criminal consequences that would follow for making false statements on applications for these SBA-guaranteed loans:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

See Exs. D & E at 2.

After processing each of Goyal's signed and certified applications, Bank-1 advised Goyal that the respective application was approved by the SBA, and that the applicant would need to execute a loan note in order for the loan to be funded. Bank-1's signing instructions to each loan note advised, **"REMINDER: The Small Business Administration, in consultation with the Secretary of the Treasury, has determined that no eligible borrower may receive more than one PPP loan.** A one loan per borrower limitation is necessary to help ensure that as many eligible borrowers as possible obtain PPP loans. If you have already received a PPP loan, **you may not**

5

**execute a loan note for another.**" (Emphasis in original.) Each note also required Goyal to represent and warrant that "All financial, tax, payroll costs, and other information submitted to Lender, including in connection with Borrower's application for the loan evidenced by this Note is true, correct, and complete as of the date of this Note."

On or about May 3, 2020, Goyal electronically executed the loan note for Loan-1 in the amount of $358,700, and received the funds in full on or about May 4, 2020 to his business account at Bank-1. On or about May 2 and 4, 2020, notwithstanding his multiple certifications to the contrary and clear admonitions against receiving more than one loan for the same business, Goyal executed multiple identical versions of the loan note for Loan-2 in the amount of $278,500. He received those funds in full, into the same business bank account as Loan-1, on or about May 11, 2020. Just one day later, Goyal would appear on a phone conference before this Court on the Indictment he had affirmatively claimed did not exist at least four times during the loan process.

A review of Goyal's bank records[4] indicates that the defendant has not hesitated to begin spending this ill-gotten money. Under first-in, first-out accounting principles, the defendant has already used nearly $30,000 of his loan fraud proceeds. Notably, although the money was placed in a business bank account, the defendant uses that account for both business and personal expenses. For example, on May 6, 2020, two days after receiving his $358,700 loan, the defendant made a payment of $1,800 out of the same account to the Westchester Country Club where he is a member—hardly the action of a cash-strapped business desperately trying to pay its employees in the midst of a pandemic. *See* Ex. G.[5]

The defendant faces a strong likelihood of conviction. The evidence in connection with the new charges is powerful and includes, among other things: Goyal's loan applications and other bank records; e-mails contained in the email accounts listed on the fraudulent loan applications and used to correspond with Bank-1; and testimony of employees of Bank-1 with whom Goyal personally met and spoke regarding his desire to apply for a PPP loan, and from whom Goyal concealed the fact that he was indicted or was applying for multiple loans in Bank-1's system.

The defendant's newest crimes demonstrate his persistent criminal intent to use his ophthalmology practice to defraud others. They also dramatically heighten his sentencing exposure. Based on a preliminary review, the defendant may face a United States Sentencing Guidelines range of as high as 235 to 293 months' imprisonment (with no acceptance of responsibility) or 168 to 210 months' imprisonment (with acceptance of responsibility) on all the charges in the Superseding Indictment. Additionally, his penalty for committing crimes on release

---

[4] The Government produced to defense counsel this and all of the Rule 16 discovery in its possession relating to these new offenses on the day the Superseding Indictment was returned.

[5] In fact, the Government's investigation has uncovered that in or about mid-March 2020, Goyal permanently closed the Mt. Kisco office of his Practice and permanently laid off the entire four-person administrative staff of that office without any severance. Goyal would later report the 2019 salaries of those four women in his Payroll Report to justify his PPP loan amounts.

will have to be consecutive to any other term of imprisonment. *See* 18 U.S.C. 3147. His incentive to flee has increased, and his willingness to disregard this Court's orders has been demonstrated.

## II.     Legal Standard for Bail Revocation

Section 3148(b) of the Bail Reform Act, 18 U.S.C. § 3148 *et seq.*, provides that a defendant's bail may be revoked, and he may be detained pending trial, if the defendant either commits a crime on pretrial release, or violates any condition of release. Specifically, Section 3148(b) provides that the defendant's bail must be revoked if, after a hearing,[6] the Court finds: (1) that there is either (A) probable cause to believe that the defendant has committed a federal, state, or local crime while on release, or (B) clear and convincing evidence that the person has violated any other condition of release; and (2) that either (A) there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, or (B) the defendant is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b).

"Probable cause under § 3148(b)(1)(A) requires only a 'practical . . . probability' that the evidence supports a finding 'that the defendant has committed a crime while on bail.'" *United States* v. *LaFontaine*, 210 F.3d 125, 133 (2d Cir. 2000) (quoting *United States* v. *Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)). Moreover, "[i]f there is probable cause to believe that, while on release, the [defendant] committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b). An indictment reflects the grand jury's finding that probable cause exists that the defendant committed a felony offense while on pretrial release. *See, e.g.*, Opinion and Order, *United States v. Paul J. Manafort, Jr.*, ECF No 328 at 11, 17 Cr. 201 (ABJ), (D.DC. June 15, 2018) ("In light of the superseding indictment, the Court does not need to engage in an independent assessment of the weight of the evidence; there has been a finding of probable cause to believe that the defendant committed a felony offense while he was on pretrial release in this case.") (footnote omitted), *aff'd United States v. Manafort*, 897 F.3d 340, 345 (D.C. Cir. 2018) (affirming detention order and noting that the probable cause finding was uncontested).

## III.    Discussion

The Government respectfully submits that Goyal's bail must be revoked because there is probable cause to believe that he has committed a new crime while on bail, and because there is no evident set of bail conditions with which Goyal would comply and which would reasonably assure the safety of the community and preclude him from continuing to commit financial crimes from work or home.

---

[6] The Second Circuit has noted that "[b]ail revocation hearings are 'typically informal' affairs." *United States* v. *Bartok*, 472 F. App'x 25, 26 (2d Cir. 2012) (summary order) (citation omitted). "It is well established in this circuit that proffers are permissible both in the bail determination and bail revocation contexts." *United States* v. *LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

A.      Goyal Committed New Crimes While on Bail

The Superseding Indictment charges Goyal with bank fraud, in violation of 18 U.S.C. § 1344, false statements on a loan application, in violation of 18 U.S.C. § 1014, and false statements to the government, in violation of 18 U.S.C. § 1001, in Counts Four, Five, and Six respectively. These federal felonies were committed while he was on pretrial release in this case. Based on the return of the Superseding Indictment, as supported by the evidence described above, there is ample probable cause to believe that Goyal committed new crimes while on bail. Indeed, the evidence is overwhelming that in the last two months, Goyal flat out lied in various ways on multiple, sworn loan applications to a government program, and successfully defrauded that program of $637,200.

B.      No Bail Conditions Will Assure the Safety of the Community, Nor Is Goyal Likely To Abide by Any Conditions of Release

Because there is probable cause to believe that Goyal committed the felonies charged in Counts Four, Five, and Six of the Superseding Indictment while on bail, a rebuttable presumption arises that he poses a danger to the community. 18 U.S.C. § 3148(b). This presumption arises even in cases where, as here, a white-collar defendant commits non-violent crimes on bail. *See LaFontaine*, 210 F.3d at 128, 134 (explaining, with respect to a defendant with no criminal history and no allegations of violence that, "[a]lthough LaFontaine's case is somewhat unusual in that there are no allegations of violence or threats aimed against witnesses, we do not find that to be determinative on the issue of 'danger to the community.'"); *United States* v. *Dupree*, 833 F. Supp. 2d 241, 253 (E.D.N.Y. 2011) ("The court may also consider 'economic harm' as evidence of dangerousness." (quoting *United States* v. *Madoff*, 586 F. Supp. 2d 240, 253 (S.D.N.Y. 2009)). Thus, in *United States v. Bartok*, the Second Circuit upheld this Court's order of bond revocation based on the defendant's perjured submission of a false Criminal Justice Act affidavit:[7] "the law plainly states that the presumption may be triggered by a probable cause finding as to a defendant's commission of any felony, regardless of whether the felony itself involves violence, threats, or other indicia of dangerousness." 472 Fed. Appx. 25, 28-29, 2012 WL 1034645 at *3 (2d Cir. 2012) (summary order).

Here, there is an acute risk that, unless detained pending trial, Goyal will continue to inflict economic harm on the community by defrauding government programs and private victims of their money. The charged healthcare scheme ran for no less than seven years, at least until the Government executed a search warrant on the defendant's healthcare practice. It involved systemic, pervasive upcoding, accomplished through templates, pre-filled out operating reports, falsified medical records, and pressure on more junior doctors and support staff to do the same. It

---

[7] As your Honor found in *Bartok*: "there are no conditions or combination of conditions that can reasonably assure his appearance for court, and his compliance with conditions of release. . . . At this point, I'm quite persuaded that although he has been complying with his reporting, he has been involved in financial machinations of a fraudulent nature, that actually could amount to a danger to the community but certainly make me unwilling and unable to trust him to abide by the conditions of release given the nature of the fraudulent conduct." Brief for the United States at 16-17, *United States v Bartok*, 13-4336 at 16-17 (2d Cir. 2014) (citing A. 63-67).

involved hundreds upon hundreds of falsified billing claims. The defendant was not deterred from engaging in this fraud by the pushback he received from certain employees, the prospect of discovery by private and government healthcare programs, or the obvious criminal exposure he was facing while mass-billing, many times a day, simple chalazion excisions as time-consuming major surgeries in the orbit of the eye (among other examples).

Goyal was similarly not deterred from criminal misconduct even after he was investigated and prosecuted for the health care fraud charged in the Indictment. He was not deterred by the strict, court-ordered conditions of his pretrial release. He was not deterred by Court-issued warnings not to commit additional crimes. He was not deterred by the risk of losing a million dollars pursuant to the conditions of the personal recognizance bond he executed. He was not deterred by being subject to Pretrial Services supervision. He was evidently not deterred by the multiple, clear warnings about the consequences of making false statements on the PPP loan applications he signed. At every turn throughout this scheme, when presented with the choice of abstaining from further misconduct or doubling down on it, he chose the latter. Beginning with his lies on the web applications in early to mid April, continuing to his fraudulent sworn applications in late April, followed up with his multiple executed loan notes in early May, and finally to receiving, keeping, and spending his fraud proceeds from early May through to the present, this defendant has consistently made the criminal choice that would line his pockets.

In short, this is a defendant who thought nothing of exploiting a devastating pandemic to perpetrate a $630,000 fraud against the government—and by extension, the countless legitimate struggling businesses competing for a limited pool of PPP funds. Apparently, he was not concerned about the ease with which he could be discovered when making a slam dunk misrepresentation about the absence of any criminal charges against him.[8] Indeed, he likely banked on the fact that the rush to provide billions of dollars in emergency loans to thousands of businesses crushed by the pandemic's financial fallout would lessen due diligence and that, consequently, his loans would be summarily approved if he checked the right boxes. His cynical opportunism was proven right, at least, for a time. Using his own social security number and name on one application, and a business name and EIN on another, Goyal successfully manufactured two separate businesses in the eyes of the program. His sworn representations that he was not subject to any criminal charges were not initially double-checked. He succeeded in obtaining the loan money through his false representations.

It is hard to fathom any credible justification for the defendant's flagrant fraud. And tellingly, it may not even be the only criminal misrepresentation he has committed while on release. The Government has uncovered at least one other instance in which the defendant made similar misrepresentations, in order to be hired by a healthcare provider. On April 20, 2020, the defendant signed and submitted a credentialing application to a telehealth provider. That

---

[8] To the extent the defendant, a well-educated and sophisticated professional, may attempt to argue there is something unclear about the loan application and the Pending Charges Question being answered by thousands of legitimate applicants across the country (there is not), it bears noting that he was represented by highly regarded, experienced criminal counsel who could have provided him guidance. The fact that he apparently did not seek such guidance, and evidently concocted and executed this scheme in secret from his own lawyers is evidence of his criminal intent.

application contained a question titled "Other Sanctions or Investigations or Criminal," which inquired: "Are you currently, or have you ever been, the subject of an investigation by any hospital, licensing authority, DEA or CDS authorizing entities, education or training program, Medicare or Medicaid program, or any other private, federal or state health program?" The defendant—who has known that he was under civil and criminal investigation for Medicare and private insurance fraud since March 2017, and who was indicted and civilly sued for those offenses in November 2019—answered, "No." *See* Ex. H at 5.

These basic facts show, by a preponderance of the evidence, that no set of bail conditions will assure that Goyal will not continue to endanger the community by committing financial crimes. *See LaFontaine*, 210 F.3d at 134 (noting that "the government's burden under § 3148(b)(2) is to prove by a preponderance of the evidence that no condition of release will prevent danger to the community"). Given that Goyal brazenly disregarded the Court's order and secretly engaged in a serious new criminal scheme while on bail, involving multiple criminal decisions over the course of about 2.5 months, the Government is at a loss to imagine a set of conditions, short of detention, that would effectively prevent Goyal from perpetrating other crimes and violating his bail conditions. Even very stringent bail conditions—home confinement with electronic monitoring—could not reasonably assure that Goyal will refrain from defrauding public and private sector victims from the comfort and ease of his home.

## IV.   Conclusion

Because Goyal committed a new crime while on bail and cannot overcome the presumption of detention, the Court should revoke Goyal's bail and order him detained pending trial.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By:   /s/_____
Vladislav Vainberg
David Felton
Margery Feinzig
Assistant United States Attorneys

cc:  Marc L. Mukasey, Esq. (by ECF)
    Winter Pascual, Pretrial Officer (by email)