

2 Grand Central Tower
140 East 45th Street, Suite 17A
New York, NY 10017

Marc L. Mukasey
Partner
212-466-6406
Marc.mukasey@mfsllp.com

January 19, 2020

**VIA ECF**
Honorable Cathy Seibel
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

        *Re:*    *United States v. Goyal*
                **S1 19 Cr. 844 (CS)**

Dear Judge Seibel:

This letter brief is respectfully submitted in further support of Dr. Ameet Goyal's request to sever the trial of Counts One, Two and Three of the referenced indictment (the "health care counts") from Counts Four, Five and Six (the "PPP counts"). For the reasons set forth below, the PPP counts are not properly joined with the health care counts. The PPP counts should be severed.

    A. Background

On or about November 21, 2019, a grand jury in the Southern District of New York returned a three-count indictment charging Dr. Goyal with participating in a scheme to defraud patients, the Medicare program, and private insurance plans between January 2010 and March 2017. Count One charged Dr. Goyal with health care fraud, in violation of Title 18, U.S.C. § 1347. Count Two charged him with wire fraud, in violation of Title 18, U.S.C. §§ 1342 and 2. Count Three charged false statements relating to health care matters, in violation of Title 18, U.S.C. §§ 1035 and 2. Dr. Goyal pleaded not guilty to the charges and was admitted to bail.

On or about June 22, 2020, the grand jury returned a six-count superseding indictment against Dr. Goyal. The superseding indictment carried over Counts One, Two and Three from the original indictment and added three new counts related to Dr. Goyal's application, while on bail, for government-guaranteed Payroll Protection Program ("PPP") loans intended to help small businesses during the COVID-19 pandemic. Count Four of the superseding indictment charges Dr. Goyal with bank fraud, in violation of Title 18, U.S.C. § 1344. Count Five charges false

Letter to the Hon. Cathy Seibel, U.S.D.J.
January 19, 2020
Page 2

statements to a bank, in violation of Title 18, U.S.C. § 1014.  Count Six charges false statements, in violation of Title 18, U.S.C. § 1001.

On October 8, 2020, the Court addressed various pretrial motions filed by the defense, including misjoinder and severance of the PPP counts.  The Court called this "the closest of the questions presented by these motions" because "one of the questions I have is whether, even if I severed, the evidence as to one fraud would be admissible in the trial of the other," under Federal Rule of Evidence 404(b).  Transcript of October 8, 2020 Hearing ("Tr."), at 34:8–13.  That question, the Court concluded, was better decided at a later point in time, when Dr. Goyal's defense to the health care fraud counts further crystallized.  For example, "if a defendant takes intent or knowledge or similar 404(b) type defenses, mistake, whatever, out of the case, then the similar act evidence doesn't come in."  Tr. 48:25–49:3.

The Court also addressed the potential for severe prejudice flowing from the PPP counts.  The Court recognized those counts are a potential "grenade in the jury box," Tr. 42:5, and that, "the jury will have a more visceral reaction to [the PPP counts] than to the health care fraud . . . . [s]o we will have to see what the state of the world is as we get closer [to trial]", Tr. 51:1–3.  In regard to Federal Rule of Evidence 403, the Court summarized:

> [D]epending on how the world is when we try the case, it might be that the PPP counts feel even more disgusting than the health care fraud counts given that they involve taking advantage of a national emergency that's caused real harm to line one's pockets during a national crisis.  Emotions related to the pandemic may still be high in March or people may feel that the corner has been turned or people may be numb.  So, you know, the 403 question ought to be determined closer to trial.

Tr. 47:12–20.

On December 22, 2020, the government provided a chart of 163 patients and their billing claims on particular dates of service that may be discussed or otherwise introduced into evidence during its case-in-chief.  The chart covers approximately 163 different patients, 1000 claims, and approximately 30 different CPT codes.[1]

Trial is set for March 29, 2020.  At that time, the medical, economic and emotional devastation wrought by the COVID-19 pandemic is expected to be at or near its worst.  *See* 'This Week' Transcript 1-3-21: Dr. Anthony Fauci, Stacey Abrams, ABC News (Jan. 6, 2021) https://abcnews.go.com/Politics/week-transcript-21-dr-anthony-fauci-stacey-abrams/story?id=75022446 (Dr. Anthony Fauci, Director of the National Institute of Allergy and

---

[1] CPT codes are numbers assigned to every task and service a medical practitioner may provide to a patient including medical, surgical, and diagnostic services.  CPT codes are developed, maintained and copyrighted by the American Medical Association.  As the practice of health care changes, new codes are developed for new services, current codes may be revised, and old, unused codes discarded.  Thousands of codes are in use at any one time.

Infectious Diseases in the interview stated, "I think we just have to assume that it's going to be worse").

As to the health care counts, Dr. Goyal expects to argue at trial that many of the procedures that the government claims were "upcoded" were, in fact, appropriately coded. In this regard, he expects to show that reasonable oculoplastic professionals can disagree about the appropriate coding for particular procedures. And in certain instances, Dr. Goyal may argue that he believed in good faith and with sound medical bases that his coding decisions were proper.[2]

B. Discussion

1. The Health Care Counts And The PPP Counts Are Not Properly Joined

Federal Rule of Criminal Procedure 8(a) provides three potential bases on which multiple offenses can be properly joined in a single indictment: (1) the offenses are of same or similar character; (2) the offenses are based on the same act or transaction; or (3) the offenses are connected with or constitute parts of a common scheme or plan. As set forth in our prior submissions, the latter two bases are plainly inapplicable: the health care counts and the PPP counts were not based on the "same act or transaction" and were not part of a "common scheme or plan." *See United States v. Shellef,* 507 F.3d 82, 99–100 (2d Cir. 2007) (severance required where one set of charges took place before the other set of charges allegedly began); *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996) (offenses must "grow out of related transactions"); *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990) ("No effort is made in the indictment even to suggest that the offenses are . . . parts of a common scheme."). That leaves the "same or similar character" basis as the sole justification for joinder. *See* Fed. R. Crim. P. 8(a)(1).

The health care counts are not "of the same or similar character" as the PPP counts. Resolution of the health care counts will depend on the applicability of different CPT codes to dozens of different complex oculoplastic and reconstructive procedures that deal with the eye socket, eyelids, tear ducts, and face. The government's proof is expected to involve the CPT code selected by Goyal and the other doctors in his practice, over the course of seven years, in multiple geographic locations. Evidence of insurance claims and reimbursements associated with the code selection will further implicate the roles of many other employees in Dr. Goyal's practice such as surgical coordinators, technicians, billers and assistants.

The PPP counts are of an entirely different character. They involve a wholly different and unrelated set of persons, issues and actions. The PPP counts have different elements, they lack temporal proximity, there is no evidentiary overlap, the physical location of the acts is different, and the alleged victims are different. Most importantly, they have nothing to do with the complex medical procedures and billing practices performed by Goyal or his fellow doctors, and employees. The false statements alleged in the PPP counts – concerning Goyal's status as a person facing

---

[2] Dr. Goyal expressly reserves the right to change, alter, modify and withdraw this approach in whole or in part as trial nears and the government complies with its disclosure obligations under Federal Rule of Criminal Procedure 16, *Jencks v. United States*, 353 U.S. 657 (1957), and *Brady v. Maryland*, 373 U.S. 83 (1963).

criminal charges – stand alone, independent of Goyal's occupation. They bear no similarity to the health care counts.

Even if the health care counts and the PPP counts were of a "similar character" in that both are schemes that used a business to obtain money from the government, for purposes of joinder "a similarity at that level of generality has been frowned upon by the Circuit and by the courts within it." Tr. at 43:23–25. "When all that can be said of two separate offenses is that they are of the 'same or similar character,' the customary justifications for joinder (efficiency and economy) largely disappear. . . . At the same time, the risk to the defendant in such circumstances is considerable." *United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978); *United States v. Bezmalinovic*, No. S3 96 Cr. 97, 1996 WL 737037, at *3 (S.D.N.Y. Dec. 26, 1996) ("The government's broad argument that in all the offenses charged, Bezmalinovic used fraud to achieve his goal of obtaining money, is true of a great number of crimes, not all of which are of a 'similar character' to each other within the meaning of Rule 8(a)."). And even if offenses can be construed as being of the "same or similar character," if they involve different times, separate locations, and distinct sets of witnesses and victims, there would be no comparable saving of trial time as separate trials would not involve substantial duplication of evidence, repeated burdens on witnesses and victims, and increased drain upon prosecutorial and judicial resources.

2. Evidence Of One Set Of Counts Would Not Be Admissible At A Trial Of The Other Set Of Counts

The operative question identified by the Court is whether "evidence as to one fraud would be admissible in the trial of the other" under Federal Rule of Evidence 404(b). Tr. 34:12–13; *Halper*, 590 F.2d at 431 ("The rule . . . requires a severance of offenses that are purportedly of the 'same or similar character' unless evidence of the joined offenses would be mutually admissible in separate trials").

To be admissible under Rule 404(b), the "other act" evidence must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction, where requested, about the purpose for which the jury may consider it. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002); *United States v. Kellogg*, 510 F.3d 188, 199 n. 10 (3d Cir. 2007) (citing *Huddleston v. United States*, 485 U.S. 681 (1988)). "[C]aution and judgment are called for, and a trial judge faced with an other crimes evidence problem should require the Government to explain why the evidence is relevant and necessary." *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978). Otherwise, of course, the accused might be convicted because of his participation in the other crimes rather than because he is guilty beyond a reasonable doubt of the crime alleged. *United States v. Manafzadeh*, 592 F.2d 81, 86 (2d Cir. 1979).

Dr. Goyal's expected defense at a health care fraud trial should not "open the door" to the PPP counts as "other crimes" evidence. For many of the medical procedures at issue in the health care counts, knowledge and intent will be "off the table" because Dr. Goyal expects to argue that the CPT codes he selected were appropriate. "Intent is not placed in issue by a defense that the defendant did not do the charged act at all." *See Manafzadeh*, 592 F.2d at 87. "[O]ther crimes evidence is inadmissible to prove intent when that issue is not really in dispute." *United States v. Williams*, 577 F.2d 188, 191 (2d Cir. 1978). As this Court stated at the October motions hearing,

"if the defense is . . . there is no misstatement because this coding is proper based on experts that the defense would call, a defense that wouldn't put the defendant's intent at issue, then maybe the PPP fraud might not come in." Tr. at 48:8–12.

Relatedly, evidence of a prior act "should not be admitted as proof of the defendant's knowledge or intent unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence.'" *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) (Kearse, J.) (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987)). In that regard, the government cannot with a straight face claim that a seven-year scheme involving intricate CPT codes bears any resemblance to a "yes or no" question about whether a PPP applicant is "subject to indictment." Indict. ¶ 38. This too should bar use of one set of counts as 404(b) evidence at a trial of the other counts.

To the extent that knowledge and intent may partially be at issue for certain of the 163 patients identified in the health care counts, the chronology of events offers another roadblock to use of the PPP counts as 404(b). The PPP counts would have no relevance to the health care counts under Rule 404(b) because the PPP counts occurred years later. Although it is logical that a prior bad act, for example in 2010, may be relevant to show knowledge or intent for a subsequent act, for example in 2020, courts are skeptical that the reverse is true – *i.e.*, that a bad act in 2020 would show, *retroactively*, knowledge or intent for an act in 2010. To impute knowledge or intent from the subsequent act,

> [t]he fact finder must assume that because a person acted expecting or intending a certain consequence at a later date, he intended that same consequence to occur when he took that same act some time before, without an obvious mechanism of why that should be. Instead, it looks more like evidence that is being offered to show that the accused is a 'bad guy,' someone with the propensity to commit criminal acts. He did it in 2008, so he must have done it in 2004. But this is of course the exact purpose for which other act evidence under Rule 404(b) is impermissible. And this is in part why the Third Circuit has expressed its skepticism of the value of subsequent acts to prove intent and knowledge: '[t]he logic of showing prior intent or knowledge by proof of subsequent activity escapes us.' *United States v. Boyd*, 595 F.2d 120, 126 (3d Cir. 1978).

*United States v. Bergrin,* No. CRIM. 09-369, 2011 WL 4407433, at *5 (D.N.J. Sept. 21, 2011).

Dr. Goyal's PPP application in 2020 can offer no insight into his intent, knowledge or motive on the health care counts that occurred years earlier, between 2010 and 2017. The government's use of the PPP acts would simply amount to improper propensity evidence and should therefore be excluded. *See Manafzadeh*, 592 F.2d at 88 ("Other" crimes, alleged to have occurred months after the crimes alleged in the indictment were "not probative of the existence of any plan in the present case").

In addition to the lack of relevance, the government can hardly claim that the PPP counts are "necessary" to prove the health care claims. *O'Connor,* 580 F.2d at 43. The government's

health care case consists of a years-long investigation that culminated in an indictment that covers tens of thousands of claims, millions of dollars in alleged fraud, and a trial lineup of 163 patient files, 1000 claims, cooperating and lay witnesses, expert witnesses, and summary charts. "Prosecutors should content themselves with presenting competent, relevant evidence and refrain from overkill, which . . . prejudices a defendant's right to a fair trial." *Wingate v. State*, 232 So. 2d 44, 46 (Fla. 3d DCA 1970) (Pearson, C.J., dissenting), *cert. denied,* 400 U.S. 994 (1971), *quoted in Wingate v. Wainwright*, 464 F.2d 209, 211 n. 1 (5th Cir. 1972). The PPP counts would be overkill at a health care trial.

If the PPP case were tried first, use of the health care fraud counts as 404(b) evidence would serve no proper purpose. First, the nature of the underlying crime with which Dr. Goyal was charged and that rendered false his answer on the PPP application whether he was "subject to indictment" is irrelevant. Second, the government does not need it to establish motive; motive is not an element of the charged PPP crimes, and, in any event, the motive for lying on a loan application is self-evident. Third, it makes little sense to introduce weeks of health care evidence as 404(b) proof at a PPP trial that might take two days, at most. Fourth, the defenses to the PPP charges – which may center around the difficult and confusing rollout of the PPP program - will be separate and distinct from the defense in the health care fraud case. *Halper*, 590 F.2d at 432 ("We fail to see, and the government has failed to demonstrate, how the alleged submission of a false income tax return is at all relevant to the question whether Halper knowingly intended to defraud the Medicaid program by allowing his clerical personnel to submit inaccurate laboratory test invoices; nor can we understand how the wealth of evidence purportedly relating to the Medicaid fraud indictment was relevant to the question whether Halper knowingly intended to submit a false personal income tax return"); *Wingate*, 464 F.2d at 214, n. 5 ("the transcript of the testimony tending to establish Wingate's guilt of other crimes is more than twice as long as the transcript of testimony tending to establish his guilt of the crime charged").

The health care counts are therefore not admissible as 404(b) evidence at a trial of the PPP charges.

3. The Prejudicial Effect Will Outweigh Any Probative Value

Even if each set of counts were relevant at a trial of the other, they should be excluded at separate trials because the probative value of the PPP evidence at a health care fraud trial, and the probative value of the health care counts at a PPP trial, would be minimal and far outweighed by the resulting prejudice.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "The prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict

on the basis of conduct not at issue in the trial." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

Introduction of the PPP counts at a trial of the health care counts would be highly prejudicial. The inflammatory nature of the PPP proof is guaranteed. Evidence would necessarily be introduced that the PPP program was designed to help small businesses during the COVID-19 pandemic. The PPP counts will thus evoke the ongoing physical, emotional and financial devastation wrought by the pandemic. Evidence and argument that the defendant attempted to fraudulently obtain a PPP loan in the middle of a pandemic will be highly charged and elicit passionate responses in jurors. On top of that, the defendant here is a medical doctor, whom, the government will argue, should have been particularly sensitive to the effects of the pandemic. To be blunt: the PPP allegations against Dr. Goyal will cloud, if not overwhelm, impartial consideration of the health care fraud charges. The "emotions of the jury will be excited to irrational behavior." *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980).

Indeed, this Court has already surmised that the PPP conduct as 404(b) proof would be "a grenade in the jury box", Tr. 42:5, and that "the jury will have a more visceral reaction to it than to the health care fraud", Tr. 51:1–2, because the PPP counts "feel even more disgusting than the health care fraud counts given that they involve taking advantage of a national emergency that's caused real harm to line one's pockets during a national crisis", Tr. 47:14–17. In short, the PPP counts are far "more inflammatory than the charged crime[s]." *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (quoting *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)). And the "[t]he reverberating clang" of those counts "would drown all weaker sounds." *Shepard v. United States*, 290 U.S. 96, 104 (1933) (Cardozo, J.).

The PPP counts would also be of "minimal evidentiary value." *United States v. Al-Moayad*, 545 F.3d 139, 160 (2d Cir. 2008). The government's health care fraud proof includes millions of pages of documents, tens of thousands of insurance claims, plus 163 patients and 1,000 procedures that will be highlighted at trial. In addition, the government has recorded phone calls, photographs, cooperating and eyewitnesses, search warrant evidence, and an expert witness who will opine on oculoplastic procedures and associated CPT codes. Against this wealth of proof, the probative value of the PPP conduct is miniscule. *See United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) ("If the incremental value is slight, and the possibility of prejudice through misuse by the jury great, the court should exclude the evidence under Rule 403."); *United States v. Mahasin*, 442 F.3d 687, 690 (8th Cir. 2006) (Where evidence of other crimes was "highly prejudicial and had very little probative value in light of the wealth of eyewitness testimony available").

No limiting instruction would likely mitigate the prejudicial effect of the PPP evidence, *i.e.*, the likelihood that the jury would substitute the COVID-19 fraud evidence for consideration of the elements of the charged crimes. *Cf. United States v. Robinson*, 560 F.2d 507, 513–14 (2d Cir. 1977) ("Absent counterbalancing probative value, evidence having a strong emotional or inflammatory impact . . . may pose a risk of unfair prejudice because it tends to distract the jury from the issues in the case and permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened. . . . The effect in such a case might be to arouse the jury's passions to a point where

they would act irrationally in reaching a verdict.") (internal quotation marks and citations omitted)). The devastation of the COVID-19 pandemic poses "a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

  C. Conclusion

For the reasons set forth above, evidence of one set of counts would not properly be admitted under Federal Rule of Evidence 404(b) at a trial of the other set of counts. Accordingly, a severance of Counts One, Two, and Three from Counts Four, Five and Six should be granted.

If a severance is granted, the defense respectfully requests to address the Court as to the sequence of the two trials.

Respectfully submitted,

Mukasey Frenchman & Sklaroff LLP

Marc L. Mukasey
Jeff Sklaroff
Torrey Young
Dan Fishbein
*Counsel for Defendant Dr. Ameet Goyal*

cc:   AUSA Margery Feinzig
      AUSA Vladislav Vainberg
      AUSA David R. Felton